BEFORE THE FIRST DIVISION, NOVEMBER 12, 1964

No. 68877.—H. H. Elder & Co. and Forest Lawn Co. *v.* United States, protest 59/29392 (Los Angeles).

OLIVER, Chief Judge: This protest relates to a mosaic panel, imported in sections, which was assessed with duty at the rate of 30 per centum ad valorem under the provision in paragraph 218(f) of the Tariff Act of 1930, as modified, for colored glass articles, not specially provided for. Plaintiffs claim that the merchandise should be classified as a work of art under paragraph 1547(a) of the Tariff Act of 1930 and dutiable thereunder at the rate of 20 per centum ad valorem.

The commodity in question is a mosaic reproduction of Trumbull's painting, "The Signing of the Declaration of Independence," concededly a work of art that hangs in the Capitol in Washington, D.C. The imported merchandise was installed as the centerpiece of a patriotic setting, titled "Court of Freedom," that is displayed in Forest Lawn Memorial Park in Los Angeles.

One witness appeared herein. He stated that he has been, for 30 years, the architectural supervisor and a member of the art committee at Forest Lawn Memorial Park, a cemetery in Los Angeles, that his principal duties are landscaping and planning features, such as the "Court of Freedom," for Forest Lawn, and that, in connection with such duties, he has made several trips to Europe for the purpose of finding "new art objects" appropriate to the landscaping of Forest Lawn. While the witness stated that he studied at Beaux Art Institute

that he attended classes in art at the Painters and Sculptors Society in Los Angeles, and that he went to Otis Art Institute, he does not hold any degree from a college or university, and he is not a professional artist. He gave no details concerning his studies at the schools he mentioned.

All negotiations for the purchase and importation of the mosaic panel under consideration were made by the witness under the supervision of the general manager at Forest Lawn, who, like the witness, is also a member of the art committee. Following is a summary of the witness' testimony, relating to the production and final installation of the mosaic reproduction under discussion.

A color photograph was taken of Trumbull's painting, "The Signing of the Declaration of Independence," as it hangs in the Capitol, and "because Trumbull's painting is an old painting that naturally would show some marks of age," an old lithograph was also obtained. With the photograph and the lithograph, the witness went to Venice, Italy, and contacted his agent, who works "for the Euphesie (phonetics) Gallery in Florence, in charge of their metallurgy, restoring all of their metallic antiques, etc." (R. 17.) Following recommendations of his Italian representative, the witness went to various studios in Venice, Florence, and Ravenna, but rejected all of them because he did not like the work of their mosaicists, and then contracted, for the production of the mosaic panel in question, with Ferrari & Bacci of Pietrasanta, Italy, whom he considered "from observation the best producers of mosaic." (R. 18.) During the course of producing the present merchandise, the witness visited the mosaicists' studio in Pietrasanta, where he observed the work, which he described as follows (R. 19):

\* \* \* Mosaics are bits of ceramic or glass called tesserae. They are glued to a sheet of rather heavy paper, in small pieces. Then they are pressed into a cement plaster paper on the outside. After it has set slightly the paper is wet, made wet, and is removed from the glass, leaving the true image. Therefore, in making a mosaic, it has to be made in reverse, so that it can be put on, the paper taken off, and you see the back of the mosaic they make. This requires— and this is a very important point—a real artist to make what is known as the cartoons, which are full-sized drawings of what the mosaic will be when it is in place. These cartoons are a single cartoon, which in this case was 20 feet high and 30 feet wide, all very much detailed in facial expression, in portraiture, because this mosaic had to have all of the widths so that when seen they would be recognized. Benjamin Franklin would look like Benjamin Franklin, the same as he did on Trumbull's painting.

The cartoon, referred to in the foregoing quotation, was cut into patterns by means of a very sharp instrument, at places where there would be a line of demarcation, or a normal change of appearance. Cutting the cartoon into patterns, or small pieces, was necessary so the tesserae, after being applied to the cartoon, could be pressed into the cement. The tesserae was applied to the cartoon by trained experts employed by the mosaicists who supervised the work. After completion, the patterns were all mounted together on a wall in reverse for inspection and final aproval by the witness. The mosaic panel was then "taken down piece by piece carefully, packed in special hermetically sealed metal, two crates" (R. 24), and shipped in sections with protective paper between them.

At the time of importation, the merchandise in question was not a completed mosaic. It arrived in this country in sections, packed in crates. Additional work was required before it became useful for its designed purpose. After uncrating the different sections, the mosaic panel was assembled. Minute corrections were made where the tesserae had shifted, and certain refinements were necessary in facial expressions that were lost in setting the tesserae in cement. The finishing work was done by a worker supplied by the Forest Lawn Co., under

the direction of one of the mosaicists who supervised production work in Italy and who came to this country with the imported merchandise, as required within the terms of the written contract, to complete the setting of the mosaic reproduction in Forest Lawn Memorial Park.

Although the provision for works of art in paragraph 1547(a) of the Tariff Act of 1930 has been given broad and liberal judicial interpretation, *Wm. S. Pitcairn Corp.* v. *United States*, 39 CCPA 15, C.A.D. 458, and "should not be limited to include only works of the free fine arts," *Abercrombie & Fitch Company* v. *United States*, 49 CCPA 129, C.A.D. 808, all decorative articles are not included therein. *United States* v. *Mrs. Adelaide Ehrich*, 22 CCPA 1, T.D. 47019. There must be sufficient evidence to show that the article in question is a work of art. In this respect, the record before us is deficient.

The testimony of plaintiffs' witness falls far short in establishing him as competent to judge whether an item is a work of art. As architectural supervisor, he worked under the direction of the general manager of the Forest Lawn Co. in acquiring the mosaic panel in question. His selection of the mosaicists that produced the imported merchandise was made through a process of eliminating other studios in various markets of Italy whose work was not satisfactory to the witness. There is no testimony by either of the mosaicists whose work is the subject of the present discussion to show that they are recognized or professional artists in their media.

On the basis of the present record and for all of the reasons hereinabove set forth, the protest is overruled, and judgment will be rendered accordingly.

Consideration has been given to all of the cases cited in the briefs filed by counsel for the respective parties. Reference herein has been made only to the cases considered necessary to support the conclusion.